IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-cr-405 (LMB) |
| | ) | 1:13-cv-1047 (LMB) |
| COLLINS KUSI SAKYI, | ) | 1:08-cv-321 (LMB) |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Collins Kusi Sakyi, ("Sakyi"), proceeding pro se, has filed a timely Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody

("Motion to Vacate"), in which he raises 15 claims of ineffective assistance of trial counsel, 8

claims of prosecutorial misconduct, and 9 claims of court error.  This is Sakyi's second motion to

vacate.  Ordinarily, such a motion would be summarily dismissed without prejudice as a second

or successive motion because Sakyi has not indicated that he has received authorization from the

appropriate appellate court to file such a motion.  See In re Vial, 115 F.3d 1192, 1194 (4th Cir.

1997) (en banc).  Nevertheless, due to the following unusual procedural background, the motion

will be addressed on its merits, as if it were Sakyi's first motion, and for the reasons discussed in

detail below, the motion will be dismissed without any additional response from the United

States.[1]

---

[1] Nearly every issue raised in the pending motion was raised in Sakyi's previous Motion to
Vacate, filed on April 1, 2008, to which the United States filed an extensive response, including
affidavits from Sakyi's trial counsel, Paul Vangellow, and case agent Tony Rodriguez.  To avoid
unnecessary and duplicative work by the United States Attorney's Office, court-appointed trial
counsel, and the case agent, the Court relies on the briefs and affidavits submitted in connection
with that motion and will not require any supplemental briefs or evidence for this motion.

## I. BACKGROUND

After a nine-month investigation, involving several cooperating co-conspirators, Collins

Kusi Sakyi ("Sakyi") was arrested on August 22, 2006, on charges of conspiracy to import

heroin from Ghana and to distribute that heroin in the Eastern District of Virginia.  The

investigation began when two individuals were arrested at Washington Dulles International

Airport on November 1, 2005, for attempting to import heroin into the United States from

Ghana.  These arrestees, as well as others who were arrested and eventually prosecuted,

identified Sakyi as their leader.  After months of investigation, Immigration and Customs

Enforcement ("ICE") arranged for a cooperating individual to purchase 100 grams of heroin

from Sakyi in Oxon Hill, Maryland.  After ICE agents identified a Comfort Inn near the spot set

for the drug sale, they proceeded to a motel room rented by Sakyi and co-conspirator Akua

Gyamfuah ("Gyamfuah").  Agents knocked on the hotel room door and, after several minutes,

Gyamfuah opened it.  Gyamfuah, who was alone in the room, consented to the agents searching

the room.  During the search, agents found in a microwave two black pellets which they

identified as devices commonly used to transport heroin.  They also recovered 1.1 kilograms of

cocaine, 95 grams of crack cocaine, and one half kilogram of heroin.  Stmt. of Facts ¶ 13 [Dkt.

No. 79].  After being read her Miranda rights, Gyamfuah stated that she and Sakyi had driven to

the motel from Virginia with the drugs, which she said belonged to Sakyi.  She admitted

checking into the room at Sakyi's direction and that Sakyi had placed the pellets in the

microwave before he left.  Sakyi was located in the hotel parking lot and immediately arrested.

On September 21, 2006, a federal grand jury returned a four-count indictment against

Sakyi and Gyamfuah, charging them with conspiracy to possess with intent to distribute one

kilogram or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846 and other substantive

2

drug offenses.  The United States filed a criminal information pursuant to 21 U.S.C § 851 as to Sakyi on September 27, 2006.  A 15-count superseding indictment was returned against Sakyi and Gyamfuah on October 26, 2006, which added a continuing criminal enterprise charge, as well as additional counts for possession and distribution of heroin, aiding and abetting flight to avoid prosecution, and obstruction of justice, respectively in violation of 21 U.S.C. § 841(a) and (c), 18 U.S.C. § 3146(a)(1), and 18 U.S.C. § 1512 (b)(1).  A 16-count second superseding indictment was returned on November 8, 2006, adding an additional charge of conspiracy to cause flight to avoid prosecution, as well as adding Jeffrey Okyere, Rose Starks, and Orrin Jones as additional defendants.  Gyamfuah pleaded guilty on December 8, 2006, under a plea agreement in which she agreed to cooperate.  Sakyi initially pleaded not guilty to all 16 counts and requested a jury trial.

Attorney Paul Vangellow ("Vangellow"), Sakyi's court-appointed lawyer, filed several pretrial motions, including motions for discovery, to suppress, for a bill of particulars, and to dismiss the indictment on the ground that it was tainted by information Sakyi provided while under an informal immunity agreement.[2]  [Dkt. Nos. 19, 20, 21, and 22]

On December 27, 2006, Sakyi attempted to plead guilty.  At the plea hearing, Chris Amolsch, an attorney who had been retained by Sakyi's family and who had represented Sakyi during plea negotiations with the government, appeared in court.  Because Sakyi indicated at the hearing that he wanted Vangellow to remain his counsel, Amolsch's request for an Order of Substitution was denied, and Vangellow remained counsel of record.  To give Vangellow sufficient time to discuss the plea agreement with Sakyi, the hearing was briefly halted.  The plea

---

[2] On November 28, 2006, Vangellow withdrew the motion to dismiss the indictment and all the other motions were denied.  See Order of Nov. 28, 2006 [Dkt. 42].

hearing resumed; however, when the plea colloquy turned to the Statement of Facts, which accompanied the plea agreement and which Sakyi had signed, he voiced several objections. Given those objections, the Court did not accept the plea.

Two days later, on December 29, 2006, a second plea hearing was held, during which Sakyi pleaded guilty under a revised plea agreement to Counts 1, 10, 11, 12, 13, 15, and 16 of the second superseding indictment. The remaining counts were dismissed.[3] The plea agreement reflected the parties' right to argue at sentencing whether or not Sakyi's offense level should be increased four points pursuant to USSG § 3B1.1(a) (Nov. 2005) for being an organizer or a leader of a criminal activity that involved five or more participants or was otherwise extensive. Plea Agr. ¶ 13(c). During the plea colloquy, the Court clarified with Sakyi that the Court would ultimately decide, based on the evidence, whether the four-point increase was warranted. Plea Tr. Dec. 29, 2006, at 10-11. As part of the plea agreement, Sakyi waived his right to appeal his conviction as well as his right to appeal any sentence, as long as the sentence did not exceed the statutory maximum.[4]

---

[3] Due to a continuing dispute about the facts, the Court struck paragraph 9 from the amended Statement of Facts. Paragraph 9 was not necessary to sustain any of the charges to which Sakyi pleaded guilty.

[4] This provision was clearly included in both plea agreements and extensively reviewed during both plea colloquies in which Sakyi clearly acknowledged that he understood he was waiving his appellate rights as to his sentence and conviction. For example, the following exchange occurred during the latter plea hearing:

> THE COURT: And lastly, do you understand that if a person pleads not guilty and goes to trial, and then is found guilty at trial, he can appeal his conviction to a higher level court?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: But under the terms of your plea agreement, as well as the way the law is structured, by being found guilty based on a guilty plea, you cannot appeal the conviction.
>
> Do you understand that?

During the Rule 11 colloquy on December 29, Sakyi stated, under an affirmation to tell the truth, that he fully understood the revised plea agreement, that the agreement constituted the complete understanding that he had reached with the government, and that he had no "side deals" or other promises from the government.  Plea Tr. Dec. 29, 2006, at 14.  He affirmed that he was not pleading guilty as a result of any force or pressure[5] and that he understood his right to plead not guilty and go to trial, at which the government would have to prove his guilt beyond a reasonable doubt.  He also acknowledged that he was fully satisfied with Vangellow's representation.[6]

Sakyi was sentenced on March 23, 2007, to concurrent sentences of 320 months incarceration for Counts 1, 10, 11, and 12; 120 months incarceration for Counts 13 and 15; and 60 months incarceration for Count 16, followed by 10-year periods of supervised release for

---

THE DEFENDANT:  Yes, your Honor.

Plea Tr. Dec. 29, 2006, at 20-21; see also id. at 12-13 (defendant answered that he understood he was waiving his right to appeal his sentence, as long as it did not exceed the statutory maximum).

[5]     THE COURT:  Has anyone put any force or pressure on you, particularly in the last 40 hours to enter this guilty plea?

THE DEFENDANT:  No, your Honor.

Id. at 21.

[6]     THE COURT:  . . . . Has Mr. Vangellow reviewed with you, again, the nature of the government's case, and any ways in which you could possibly defend yourself against any or all of these charges to which you are going to be pleading guilty today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you fully satisfied with the way he has worked for you in this case?

THE DEFENDANT:  Yes, your Honor.

Id. at 14.

Counts 1, 10, 11, and 12, and three-year periods of supervised release for Counts 13, 15, and 16.[7] An Order of Forfeiture was also entered.

Sakyi did not file a direct appeal but timely filed his first § 2255 motion on April 1, 2008. In that motion, he raised 49 claims involving three specific issues: ineffective assistance of trial counsel, Paul Vangellow; prosecutorial misconduct; and errors by the Court. The United States filed a response, which included affidavits from Vangellow and the case agent, and Sakyi filed a reply. Sakyi also filed a motion to supplement his initial § 2255 motion with additional claims. That motion was denied,[8] although Sakyi was allowed to supplement his § 2255 with additional facts and argument—but not additional claims—in his reply brief.

On December 24, 2009, all claims in Sakyi's first § 2255 motion were dismissed with prejudice except for the claim that after being instructed to file a notice of appeal, trial counsel failed to do so.[9] For that one issue, Sakyi was given 20 days to provide evidence as to "when, where and how he directed his counsel to file an appeal." Order of Dec. 24, 2009 [Dkt. No. 200]. Sakyi filed his position under the penalty of perjury and the United States responded with an additional affidavit from Vangellow. On the basis of the pleadings, the Court dismissed with prejudice all of the claims in the Motion to Vacate except for the one alleging that Vangellow had failed to file a Notice of Appeal. Because the evidence was in equipoise on that issue, Sakyi was given the benefit of the doubt. As a result, an Order issued on June 7, 2010, granting Sakyi's first § 2255 motion solely on that one claim, directing Sakyi to file a notice of appeal.

---

[7] The Court found that the four-point increase to the offense level for a leadership role was appropriate.

[8] Sakyi appealed this denial; however, the appeal was dismissed as interlocutory.

[9] To the extent it addressed the same issues raised in this § 2255 motion, the reasoning in that Memorandum Opinion [Dkt. No. 199] is incorporated in this Opinion.

Sakyi appealed that decision. The Fourth Circuit found that, given the district court's decision to allow Sakyi an opportunity to take a direct appeal, the Court should have vacated the judgment and then reimposed it to restart the 14-day period in which to notice an appeal. See United States v. Sakyi, No. 10-6887 (4th Cir. Apr. 7, 2011) (unpublished per curiam opinion). On that procedural basis, the Fourth Circuit remanded the case for entry of a new judgment. It also "affirm[ed] the denial of relief" but modified the denial of relief on the remaining claims to be without prejudice.[10] Id. at 3.

On remand, the judgment was vacated and reinstated, and appellate counsel was appointed. Sakyi timely noticed his appeal, in which he argued that the district court committed error when it denied his suppression motion, enhanced his sentence by imposing a leadership role, and failed to adjust his criminal history when it reentered the judgment. Sakyi also argued that the government breached the plea agreement by using information he had provided under an immunity agreement to enhance his sentence. He did not raise in his appeal any claim that the indictment was tainted by the government's use of his immunized statement.

On August 14, 2012, the Fourth Circuit rejected all of these arguments in an unpublished opinion. See United States v. Sakyi, No. 10-4706 (4th Cir. Aug. 14, 2012) (unpublished per curiam opinion). As to the claimed sentencing errors, the Fourth Circuit held that Sakyi had pleaded guilty under a valid plea agreement in which he waived his right to appeal both his sentence and conviction. The opinion went on to find that the district court "fully complied with Fed. R. Crim. P. 11" in conducting the plea colloquy and had "reviewed the waiver [of appeal rights] in some detail." Id. at 5. Finding that Sakyi had, therefore, waived his appellate rights,

---

[10] It appears from the language that the court of appeals affirmed the dismissal of the other claims in that it stated it "affirm[ed] the denial of relief;" however, because it also modified the denial of those claims to be "without prejudice," this Court has given Sakyi the benefit of the doubt and will address each claim in this new Motion to Vacate even though nearly every claim was fully discussed and found meritless in the prior Opinion.

the Court also declined to review the denial of the motion to suppress or the enhancements used

for sentencing and dismissed the appeal of those issues. The court affirmed the district court's

finding that the government had not breached the plea agreement and remanded the case solely

to correct an erroneous statutory citation for Count 13.[11]  Lastly, Sakyi's motion to file a pro se

supplemental appellate brief was denied. Sakyi's petition for a rehearing was denied and the

mandate was returned to this Court on October 24, 2012. Sakyi timely filed the pending § 2255

Motion to Vacate.

## II. DISCUSSION

To succeed in his § 2255 motion, Sakyi has the burden of establishing by a

preponderance of the evidence that his sentence or conviction was imposed in violation of the

Constitution or laws of the United States, that the Court was without jurisdiction to impose the

sentence, or that the sentence exceeded the statutory maximum or is otherwise subject to

collateral attack. 28 U.S.C. § 2255(a). An evidentiary hearing in a § 2255 proceeding must be

held if the movant alleges facts which, if true, would entitle him to relief. See United States v.

Magini, 973 F.2d 261, 264 (4th Cir. 1992). A hearing is not required if "the motion and the files

and records of the case conclusively show that the prisoner is entitled to no relief." Id. (quoting

28 U.S.C. § 2255(b)).

As the Court previously found in addressing Sakyi's first Motion to Vacate, all of the

issues he raises in this motion fall into three categories: ineffective assistance of counsel,

prosecutorial misconduct, and errors by the Court.

---

[11]  A properly corrected judgment was entered on October 25, 2012.

## A. **Ineffective Assistance of Trial Counsel**

To succeed on an ineffective assistance of counsel claim, Sakyi must meet the "highly deferential" two-prong test established in Strickland v. Washington, 466 U.S. 668, 689 (1984). First, he must show that the conduct of his attorney was "deficient," which is defined as falling below an objective standard of reasonableness. Id. at 687-88. Second, he must show that the attorney's deficient performance caused actual prejudice. Id. at 692. Because he pleaded guilty, to meet the second prong's actual prejudice requirement, Sakyi must show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Fugit, 703 F.3d 248, 259 (4th Cir. 2012) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Sakyi bears the burden of proving both prongs.

As to his claims of being dissatisfied with Vangellow's representation, those claims conflict with Sakyi's affirmance under oath during both plea colloquies that he was fully satisfied with how Vangellow had represented him. Plea Tr. Dec. 29, 2006, at 14; Plea Tr. Dec. 27, 2006, at 57. Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted); see also Blackledge v. Allison, 431 U.S. 63, 76 (1977). Therefore, Sakyi's claims of ineffective assistance of counsel must be considered in light of the "strong presumption" of veracity as to his admissions during the plea colloquies that he was completely satisfied with Vangellow's representation. Lemaster, 403 F.3d at 221.

9

1.   Failure to Investigate Facts of Case (Claim 1)

Sakyi claims that Vangellow did not investigate his case adequately by failing to visit the

Comfort Inn, to interview hotel staff, and to obtain a hotel surveillance tape.  This claim is

without merit as the record shows that Vangellow did in fact secure the motel video tape and

thoroughly investigated the case, including obtaining police reports.  Vangellow Aff.[12] ¶¶ 4-6.

Sakyi has presented no evidence contradicting the record or showing that counsel did not

conduct a meaningful investigation.  Moreover, when asked during his plea colloquies about

counsel's investigation of the case, Sakyi expressed satisfaction.

> THE COURT: . . . And has Mr. Vangellow had enough time to carefully go over
> with you the kind of evidence the Government has against you and how you could
> possibly defend yourself if you plead not guilty and went to trial on these
> charges?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT:  Are you fully satisfied with the way Mr. Vangellow has worked
> for you in this case?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. Dec. 27, 2006, at 57; see also Plea Tr. Dec. 29, 2006, at 14 (same).  For these reasons

and those previously provided, this claim will be dismissed.

2.   Failure to Suppress Physical Evidence (Claims 2, 3, and 4)

Sakyi claims that Vangellow was ineffective in his efforts to suppress evidence from the

search of the Comfort Inn hotel room that occurred shortly before Sakyi's arrest.  Specifically, he

argues that Vangellow should have called the hotel clerk (Claim 2) and co-defendant Gyamfuah

---

[12] Vangellow's Affidavit was attached as Exhibit E to the government's opposition to Sakyi's
first Motion to Vacate.  [Dkt. No. 178]

(Claim 3) to testify at the suppression hearing.  As a matter of procedure, any complaints about

Sakyi's suppression motion were waived during his plea colloquies:

> THE COURT:  You have already had a motions hearing in this case, the types of motions that Mr. Vangellow argued on your behalf, such as a motion to suppress, as I recall.
>
> Do you understand that by pleading guilty you are going to be giving up any appeals you might have of any of the Court's rulings on those motions?
>
> THE DEFENDANT:  Yes, your Honor.

Plea Tr. Dec. 27, 2006, at 63-64.

> THE COURT:  And if you -- you already filed pretrial motions.  We addressed that last time, as well.  The pretrial motion to suppress was denied by the Court, as I explained to you on Wednesday.
>
> Do you understand that by pleading guilty, you will give up, among other things, your right to appeal the decision of the Court as to that pretrial motion?
>
> THE DEFENDANT:  Yes, you Honor.

Plea Tr. Dec. 29, 2006, at 20.

Vangellow filed a motion to suppress the drugs and other evidence obtained through the

search of the Comfort Inn room and an evidentiary hearing was held on that motion.  Ultimately,

the motion was denied.  That defense counsel's motion was unsuccessful does not, in and of

itself, constitute ineffective assistance.  Cf. Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995)

("[U]nsuccessful trial tactics neither constitute prejudice nor definitively prove ineffective

assistance of counsel.").  Counsel's representation need only be within the range of competence

demanded of attorneys in criminal cases, not flawless.  See Marlar v. Warden, Tyger River Corr.

Inst., 432 F. App'x 182, 188 (4th Cir. 2011); Marzullo v. State of Md., 561 F.2d 540, 544 (4th

Cir. 1977).  None of Sakyi's factual assertions show that Vangellow performed below an

objective standard of reasonableness in either the written motion to suppress or during the evidentiary hearing.

Sakyi asserts that both Gyamfuah and the hotel clerk working the night of his arrest would have provided favorable testimony, which he does not specify. Moreover, in their affidavits, both Vangellow and case agent Rodriguez affirmed that by the time of the suppression hearing, Gyamfuah was cooperating with the government and would not have provided testimony favorable to Sakyi. Vangellow Aff. ¶ 8; Rodriguez Aff.[13] ¶¶ 8-9. In addition, Sakyi admitted in his reply in support of his first Motion to Vacate that Vangellow told him that he did not call Gyamfuah because she was helping the prosecution. See Sakyi Reply to Gov. Resp., Ground Three F [Dkt. No. 195]. Sakyi cites no evidence other than his own speculation that Gyamfuah's testimony would have been favorable.

Although Vangellow did not call the hotel clerk on duty the night Sakyi was arrested, he did call the hotel manager, who testified that he did not know what was on the security tape from the evening in question. Sakyi's focus on the security tape and the hotel clerk's testimony involves pure speculation.[14] Sakyi has thus failed to establish that Vangellow's tactical decisions not to call these witnesses, decisions which are entitled to great deference, were below an objective standard of reasonableness. See Bunch v. Thompson, 949 F.2d 1354, 1364 (4th Cir. 1991) ("The best course for a federal habeas court is to credit plausible strategic judgments [by counsel] . . . .").

---

[13] Rodriguez's Affidavit was attached as Exhibit F to the government's opposition to Sakyi's first Motion to Vacate. [Dkt. No. 178]

[14] In fact, the record indicates that Vangellow was able to thoroughly evaluate this issue because he had a copy of the tape, which had been turned over by the government. Vangellow Aff. ¶ 4.

Finally, in Claim 4, Sakyi alleges that Vangellow failed to file a motion for a rehearing after his Motion to Suppress was denied. Sakyi does not describe any new evidence that Vangellow could have offered at such a rehearing other than repeating his claim that Gyamfuah and the hotel clerk should have been called. None of these claims has merit and therefore they will be dismissed.

### 3.  Failure to Suppress the First Indictment (Claim 5)

Sakyi alleges that Vangellow was ineffective in failing to win a dismissal of the original indictment on the ground that it was tainted by alleged immunized information Sakyi had revealed to the government during post-arrest debriefings. The record shows that Vangellow initially filed a Motion to Dismiss. The government responded with an extensive opposition, explaining the parameters of Sakyi's debriefing and also outlining the evidence it had already obtained from cooperating witnesses before Sakyi was arrested. In his affidavit, Vangellow explained that he determined that the government had not based its charges on any immunized information and that it had separate, corroborated evidence for each charge, and on that basis he withdrew the motion. Vangellow Aff. ¶ 12.

The record establishes that the evidence against Sakyi was developed through the government's debriefing cooperating witnesses well before Sakyi was arrested and from the evidence seized from the Comfort Inn. Sakyi has tendered no evidence to contradict Vangellow's assertion. As such, the Court finds that Vangellow's conclusion that the indictment was not based on immunized statements from Sakyi was reasonable, and the decision not to pursue a dismissal of the indictment was fully justified. Lastly, it is significant that when a similar taint issue was raised on appeal, the Fourth Circuit found no misconduct by the government. See Sakyi, No. 10-4706, at 3-4 (4th Cir. Aug. 14, 2012) (finding that the

13

government had not used immunized information at the sentencing hearing because the challenged information had been obtained through an independent source—Sakyi's co-conspirators). For these reasons, this claim will be dismissed.

4.  Inadequate Representation Related to the Guilty Plea (Claims 6, 7, 10, 11, 13, and 15)

Despite unambiguously affirming during his plea colloquies that he was fully satisfied with Vangellow's representation, Sakyi makes multiple claims of ineffective assistance of counsel in connection with his guilty pleas and also suggests that his pleas were involuntary. In Claim 6, he alleges that Vangellow failed to inform him that an earlier plea offer would be withdrawn on a certain date. As Vangellow explained in his affidavit, early in the case he had obtained a favorable plea agreement based on Sakyi's proffered cooperation, but it "became less favorable over time as Sakyi refused fully to cooperate with the United States and obstructed justice." Vangellow Aff. ¶ 11. Vangellow also avers that both he and the prosecutor "advised Sakyi repeatedly about plea offer acceptance deadlines." Id. ¶ 13. Sakyi has produced no evidence to contradict his counsel's response. Therefore, there is no merit to this claim, which will be dismissed.

In Claim 7, Sakyi alleges that counsel never told him he could take a conditional plea under which he could reserve his right to appeal the denial of his suppression motion. He goes on to argue that "during my plea hearing I thought I had already lost my right to file for appeal on my suppression . . . . Counsel never told me that suppression appeal was still valid and it will be only invalid after the plea. First time that I heard I was giving [sic] my right to appeal the suppression was when the Court asked me during my plea hearing." Mot. to Vacate 4 (Aug. 21, 2013) [Dkt. No. 253].

14

On this record, there is no evidence of any error by counsel because there is no evidence

in the record that government counsel would have offered Sakyi a conditional plea. Moreover,

Sakyi waived this issue by not raising it on appeal. Lastly, his claim that he did not realize that

he was giving up his right to appeal the denial of his suppression motion until his final plea is

contradicted by the record. On December 27, 2006, when Sakyi first tried to plead guilty, he was

clearly advised by the Court that a result of his plea would be losing the right to appeal the ruling

on his suppression motion.

> THE COURT: You have already had a motions hearing in this case, . . . such as a
> motion to suppress . . . . Do you understand that by pleading guilty, you are going
> to be giving up any appeals you might have of any of the Court's rulings on those
> motions?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. Dec. 27, 2006, at 63-64. Sakyi had two more days to think about that implication of

pleading guilty; however, he never raised any objection to that result.

On Friday, December 29, during his second plea colloquy, Sakyi was again asked

whether he understood he was giving up the right to appeal that decision:

> THE COURT: . . . [Y]ou already filed pretrial motions. We addressed that last
> time, as well. The pretrial motion to suppress was denied by the Court, as I
> explained to you on Wednesday.
>
>  Do you understand that by pleading guilty, you will give up, among other
> things, your right to appeal the decision of the Court as to that pretrial motion?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. Dec. 29, 2006, at 20.

Even if Sakyi was initially under a misunderstanding about his ability to appeal the denial

of his motion to suppress when he first came before the Court, he was on clear notice when he

entered his final pleas on December 29, 2006, and cannot now claim that his counsel was ineffective in how he handled that issue. Therefore, this claim will be dismissed.

In Claim 10, Sakyi contends that Vangellow was ineffective in failing to file a motion to withdraw his guilty pleas after Sakyi asked him to do so. Sakyi contends that he wanted to withdraw his guilty pleas at his sentencing hearing but that Vangellow told him he was being "stupid" and to simply apologize when asked if he had anything to say. Mot. to Vacate 6 [Dkt. No. 253]. In response to this claim, Vangellow avers that he does not recall any request by Sakyi to move to withdraw his guilty pleas. Vangellow Aff. ¶ 21. The record shows that no motion to withdraw the guilty pleas was ever filed. Moreover, as of February 15, 2007, only a few weeks before his sentencing hearing, Sakyi wrote a letter fully admitting his guilt, including his involvement in efforts to cause a witness to flee the United States.[15] That letter made no mention of any disagreement with the facts or of any desire to withdraw the guilty pleas. As a result of that letter, Sakyi received a three-level reduction to his offense level. See Presentence Rep. ("PSR") ¶¶ 83-85.

At the March 23, 2007, sentencing hearing, Sakyi's tone was quite different from that in his letter. He complained about the accuracy of the Presentence Report. See Sentencing Tr. 8-9 ("I don't agree with the pre-sentence report."); id. at 10 ("[I]t's lies."). Then he complained about his plea, in particular questioning why the government had withdrawn early plea agreements and filed a § 851 information. See id. at 9 ("[T]he first plea, he did not file an 841

_____

[15] In his letter, Sakyi stated among other things, "The actions that I took during the course of the drug dealing and obstruction crimes that I committed were not only illegal but they were wrong. . . . I knowingly participated in drug dealing that involved other people . . . . I also understand that by attempting to have my co-defendant leave the country so as not to testify against me, I undermined the integrity of the legal system . . . ." See Statement of Collins Kusi Sakyi Regarding Acceptance of Responsibility, attached to the Presentence Report.

[sic] against me . . . . A couple of days later, he filed an 841 [sic]. . . . And took the first plea

back."). After hearing other complaints about the plea, the Court advised Sakyi that no motion

to withdraw his guilty pleas had been filed and even if it had been, at that late date, under the

Moore factors, such motion would not have been granted. Id. at 11.

A defendant does not possess an absolute right to withdraw a guilty plea. United States

v. Moore, 931 F.2d 245, 248 (4th Cir. 1991). Rather, a court considers a number of factors in

determining whether there is a fair and just reason to allow withdrawal based on "(1) whether the

defendant has offered credible evidence that his plea was not knowing or not voluntary, (2)

whether the defendant has credibly asserted his legal innocence, (3) whether there has been a

delay between the entering of the plea and the filing of the motion, (4) whether defendant has

had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the

government, and (6) whether it will inconvenience the court and waste judicial resources." Id.

Sakyi has failed to allege any circumstances supporting a permissible basis to support

withdrawal of a guilty plea. Given the significant evidence against him and his participation in

two extensive plea colloquies, there is no basis to conclude that the Court would have granted a

motion to withdraw even if it had been filed. Although Vangellow does not recall ever being

asked to move to withdraw the pleas, his decision not to file such motion would have been

reasonable legal advice under the circumstances.

All of the claims alleging that Vangellow coerced Sakyi into pleading guilty are

"palpably incredible" given that Sakyi admitted during both plea colloquies that he was fully

satisfied with counsel's representation, that he had gone over both the original and amended plea

agreements and Statement of Facts in detail with counsel, that he understood them, and that his

pleas were completely voluntary. See Plea Tr. Dec. 29, 2006, at 6-14, 21-22; Plea Tr. Dec. 27,

2006, at 14-17, 64.  It is well established that these statements are binding absent clear and convincing evidence to the contrary.  See Burket v. Angelone, 208 F.3d 172, 191 (4th Cir. 2000); Fields v. Att'y General of State of MD, 956 F.2d 1290, 1299 (4th Cir. 1992).  Sakyi has not provided any evidence to demonstrate that his statements during both colloquies were untruthful or involuntary when made.

For example, in Claim 11, Sakyi alleges that Vangellow dictated how he should answer the Court's questions during the plea colloquy depending on how counsel turned his pen: "[I]f he turn [sic] the pen the long way I should answer yes and if he turn [sic] the pen the other way I should answer no to the judge's question, making my plea involuntary."  Mot. to Vacate 6 [Dkt. No. 253].  The transcripts for both plea colloquies defeat this claim.  Those transcripts show that Sakyi was hardly an automaton in the plea colloquies, during which he interjected numerous comments.[16]  Moreover, he specifically admitted that he was entering his pleas voluntarily.[17]  In addition, weeks after he entered his pleas, he wrote a letter to the probation officer during the presentence investigation admitting his guilt and making no claim of being coerced into pleading guilty.  Given this record, there is no basis upon which to find that Sakyi's pleas were improperly coached by counsel or were in any respect involuntary.  Therefore, Claim 11 will be dismissed.

In Claim 13, Sakyi appears to complain about Vangellow refusing to approach the prosecutor to see if Sakyi could plead to some counts and go to trial on others; in essence arguing that he was dissatisfied with the plea bargain to which he had finally agreed.  Vangellow avers that he "advised Sakyi that he could plead in part and go to trial in part, but that the United States

---

[16]  See, e.g., Plea Tr. Dec. 29, 2006, at 39-44.

[17]  During the second plea colloquy, Sakyi was asked: "Has anyone put any force or pressure on you, particularly in the last 40 hours, to enter this guilty plea?"  Sakyi responded, "No, your Honor."  Plea Tr. Dec. 29, 2006, at 21.

would withdraw it's [sic] offer of a cooperation plea and a possible sentence reduction if Sakyi

made this decision[.]" Vangellow Aff. ¶ 16. Such a request would hardly have been

advantageous to Sakyi. Given that a major advantage to the government in offering a plea

bargain to a defendant is the ability to avoid the time and expense of a trial, if a defendant only

agrees to plead to a few counts and insists on going to trial on the rest, the government usually

rejects such an offer. Given the government's insistence on Sakyi pleading to multiple counts, it

is highly unlikely that such a request would have been accepted, and there is no reason to believe

that Sakyi's ultimate sentence would have been any lower if he had gone to trial on some counts.

Therefore, this claim will be dismissed.

In Claim 15, Sakyi complains about the four-level increase to his base offense level for

having a leadership role. Specifically, he argues that Vangellow was ineffective in advising him

to accept the term in the final plea agreement that allowed both sides to argue whether that

increase should apply. Sakyi claims that he "only agree[d] for the Court to decide the 4 points

enhancement because of my counsel." Mot. to Vacate 8 [Dkt. No. 253]. This is a meritless

claim because, regardless of what guideline factors the parties agree to in a plea agreement, the

Court retains the power to determine the applicable guideline factors, unless the plea is made

under Fed. R. Crim. P. 11(c)(1)(C), which is a type of plea rarely accepted by the Court because

it contains binding provisions. In fact, Vangellow protected Sakyi in the final plea agreement by

avoiding a stipulation on the issue, which could have foreclosed Sakyi's opposing the

enhancement.[18] As the record shows, at the sentencing hearing Vangellow did argue that the

---

[18] The first plea agreement included a stipulation by defendant that he was subject to a four-level
leadership enhancement to his offense level. The final plea agreement omitted that stipulation
enabling Sakyi to argue against the enhancements, and Sakyi admitted that he understood:

THE COURT: . . . [D]o you understand that you are free to dispute, at the time of

four-level enhancement should not be applied; however, he was unsuccessful. On appeal, the

Fourth Circuit dismissed Sakyi's challenge to that enhancement on the basis of the valid

appellate waiver in his plea agreement. See Sakyi, No. 10-4706, at 6 (4th Cir. Aug. 14, 2012).

For all these reasons, this claim will be dismissed.

### 5.   Failure to Move to Dismiss Count 13 (Claim 8)

Sakyi claims that Vangellow was ineffective by failing to move to dismiss Count 13,

which charged him with aiding and abetting Fred Asante's flight from prosecution in violation of

18 U.S.C. §§ 2 and 3146(a)(1). Specifically, he argues that Count 13 did not allege a crime and

that Vangellow should have moved to dismiss it. This claim has no merit as all elements of the

offense were properly alleged.

Sakyi also argues that this count was based upon information he provided while he was

immunized; however, the record, including Vangellow's affidavit, clearly shows that this count

was based on information from independent sources other than Sakyi. Vangellow Aff. ¶ 12.

Indeed, Sakyi admitted during his plea colloquy and in the previously discussed letter of

February 17, 2007, that he helped Asante flee the United States, see Plea Tr. Dec. 29, 2006, at

39-40, and even now he does not claim being actually innocent of that offense. Accordingly, this

claim will be dismissed.

### 6.   Failure to Suppress Rule 404(b) Evidence (Claim 9)

Sakyi complains that Vangellow failed to tell him that statements by co-defendants

Jeffrey Okyere, Gyamfuah, Daniel Gyamfi, and Gifty Boakye could be suppressed: "Counsel

---

sentencing . . . that you had an organizer or leadership position in this criminal
activity . . . . And that is a change from the other stipulation from the other
day. . . . [D]o you understand what that means?
THE DEFENDANT: Yes, your Honor.
Plea Tr. Dec. 29, 2006, at 10-11.

never talk trial strategy with me about any suppression of these statement[s] . . . ." Mot. to

Vacate 9 [Dkt. No. 253]. This claim contradicts Sakyi's acknowledgment during his final plea

colloquy that Vangellow had discussed the evidence with him:

> THE COURT:  . . . Has Mr. Vangellow reviewed with you, again, the nature of the government's case, and any ways in which you could possibly defend yourself against any or all of these charges to which you are going to be pleading guilty today?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT:  Are you fully satisfied with the way he has worked for you in this case?
>
> THE DEFENDANT: Yes, your Honor.

Plea Tr. Dec. 29, 2006, at 14.

To the extent Sakyi mentions Fed. R. Evid. 404(b), he has not described how statements

by these witnesses would even constitute Rule 404(b) evidence.  In fact, Okyere, Gyamfuah,

Gyamfi, and Boakye were all co-conspirators of Sakyi. See PSR ¶¶ 76-81.  Therefore, any

statements they made would have been admissible against Sakyi under Fed. R. Evid.

801(d)(2)(E), which allows the statements of co-conspirators to be admitted as long as the

statements were made during and in furtherance of the conspiracy.  United States v. Graham, 711

F.3d 445, 453 (4th Cir. 2013).  Any effort by Vangellow to keep statements of these witnesses

out of Sakyi's case would have been futile.  Accordingly, this claim is meritless and will be

dismissed.

7.  Speedy Trial Rights (Claim 12)

Sakyi complains that Vangellow failed to assert his speedy trial rights under 18 U.S.C.

§ 3161(c)(1); however,  Sakyi waived his speedy trial rights when he pleaded guilty. 18 U.S.C.

§ 3162(a)(2).  The issue, then, is whether Vangellow was ineffective in counseling Sakyi to plead

guilty, rather than moving for a dismissal of the second superseding indictment on Speedy Trial Act grounds.

Sakyi's guilty plea on December 29, 2006, occurred 99 days after the first indictment was returned against him on September 21, 2006. Although the Speedy Trial Act normally requires that a trial be held within 70 days of a defendant's first appearance in court, the Act excludes from that time period any days from the filing of a pretrial motion until the hearing on, or disposition of, such motion. 18 U.S.C. § 3161(h)(1)(D); United States v. Osteen, 254 F.3d 521, 525 (4th Cir. 2001). Accordingly, the 22 days between November 7, 2006—when Sakyi's pretrial motions were filed—and November 28, 2006—when the Court ruled on them—are excluded. The Court also finds that December 28 and 29 are excludable as a "period of delay resulting from other proceedings concerning the defendant," 18 U.S.C. § 3161(h)(1), given that the delay resulted from Sakyi's own decision to sign a plea agreement containing facts he later contested in open court. Thus, at most, 75 non-excludable days elapsed between the first indictment and Sakyi's guilty plea; however, during that time period, two superseding indictments were returned against Sakyi, for which an additional reasonable amount of time is excludable. See United States v. Carey, 746 F.2d 228, 230-31 (4th Cir. 1984) (holding that a reasonable exclusion applies to allow for the joinder of multiple offenses against a single defendant, as it does for joinder of defendants). Given that the superseding indictments joined additional charges against Sakyi, and additional co-defendants, such a reasonable exclusion was proper here. Accordingly, the time between the filing of the first indictment and acceptance of

22

Sakyi's plea, with exclusions, was within the time period allowable under the Speedy Trial Act

and Vangellow was not ineffective in failing to raise a Speedy Trial Act claim.[19]

       8.   Failure to Investigate Prior Drug Charge (Claim 14)

      Sakyi alleges that Vangellow was ineffective for failing to investigate the prior drug

charge that formed the basis for the § 851 information.  The charge at issue was a 1997

conviction for possession of five or more grams of crack cocaine with intent to distribute.

United States v. Sakyi, No. 1:97-cr-181 (E.D. Va. Sept. 26, 1997), aff'd, 160 F.3d 164 (4th Cir.

1998).  Sakyi pleaded guilty to the charge and was sentenced in this court to 37 months

imprisonment.  His appeal of the conviction was denied in a published opinion.  See United

States v. Sakyi, 160 F.3d 164 (4th Cir. 1998).  He failed to timely file a § 2255 motion to vacate

that conviction, and the Fourth Circuit upheld the district court's denial of Sakyi's request to file

a late § 2255 motion.  See United States v. Sakyi, No. 09-6508 (4th Cir. June 1, 2009)

(unpublished per curiam opinion).

      In his reply in support of his first Motion to Vacate, Sakyi went into great detail about

that conviction, describing how he was a passenger in a car driven by Lemont Gunn on the

George Washington Parkway.  See Sakyi Reply to Gov. Resp., Ground One M [Dkt. 195].  Gunn

had no driver's license and was stopped for a traffic violation.  Id.  Sakyi further elaborated, "I

was a passenger in the car with him and before he was arrested, he gave me 5 grams of crack to

---

[19]  Even if Vangellow had succeeded in having the second superseding indictment dismissed
under the Speedy Trial Act, there is no evidence to support a conclusion that the dismissal would
have been with prejudice.  In determining whether to dismiss an indictment with or without
prejudice, a court must consider "the seriousness of the offense; the facts and circumstances of
the case which led to the dismissal; and the impact of a reprosecution on the administration of
this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).  Given the extremely
serious allegations against Sakyi, his involvement in plea negotiations with the government, and
the de minimus nature of any delay extending past 70 days, had Sakyi demonstrated a Speedy
Trial Act violation, any dismissal would most likely have been without prejudice, which would
have permitted the government to go back to a grand jury and seek a new indictment.

take home for him. He told me to give it to his brother." Id. That admission clearly establishes that Sakyi was properly convicted of possession of five grams of crack with intent to distribute. He simply mixes up the concepts of ownership and possession. Even assuming the truthfulness of Sakyi's allegation that he only claimed ownership of the crack because Gunn threatened him in the back of the police car after their arrests, Sakyi had willingly taken possession of the crack, with the intent to distribute it to Gunn's brother, before any threats were made.

Lastly, Sakyi unambiguously admitted to being guilty of the prior drug offense and to understanding the impact it would have on his sentence.[20] Given these facts, Sakyi's argument that Vangellow should have investigated the prior charge further is meritless. Accordingly, this claim will be dismissed.

### B. Prosecutorial Misconduct

Sakyi asserts multiple claims of prosecutorial misconduct which, because he pleaded guilty, are only relevant to the extent that they may have impacted the knowing or voluntary nature of his guilty plea. See United States v. Broce, 488 U.S. 563, 569 (1989).

### 1. Misuse of Information about Fred Asante (Claims 1 and 2)

Sakyi alleges that prosecutors "breached [the] plea agreement by using information the defendant gave" to support the portion of the Statement of Facts supporting Count 13. This claim essentially repeats Sakyi's previous allegation that the government improperly used information he provided under an immunity agreement to support obtaining the indictments. As

---

[20]    THE COURT:  . . . Do you agree that you have been convicted of a felony drug offense, and that you are going to receive the enhanced penalties provided under Section 851 of the code?

THE DEFENDANT:  Yes, your Honor.

Plea Tr. Dec. 29, 2006, at 10.

24

discussed above, there is no evidence in the record to support this claim and the Fourth Circuit has rejected this claim, which will be dismissed.

### 2. Brady Violation (Claim 3)

Sakyi alleges that the government violated the requirements of Brady v. Maryland, 373 U.S. 83 (1963), when the prosecutor failed to give Vangellow all of the hotel video surveillance tapes and reports of unspecified interviews. To establish a Brady violation, a defendant must show that the withheld information was favorable, material, and in the prosecutor's possession. See United States v. Sarihifard, 155 F.3d 301, 309 (4th Cir. 1998) (citing Moore v. Illinois, 408 U.S. 786, 794-95 (1972)). The record, including Vangellow's affidavit, refutes this claim. In fact, Vangellow did receive a copy of the video tape and police reports, among other materials, from the prosecutor. See Vangellow Aff. ¶¶ 4, 6. Even if Sakyi had been able to show that certain evidence had not been provided, he must establish a "reasonable probability" that disclosure would have generated a different result. Strickler v. Greene, 527 U.S. 263, 289-90 (1999). In his reply to the government's opposition to his original Motion to Vacate, Sakyi maintained that the video tape would have shown that he was never in the room where the drugs were found. Sakyi Reply to Gov. Resp., Ground Three B [Dkt. No. 195]. That claim contradicts Sakyi's admission under oath during the plea colloquy and in his Statement of Facts in which he stated that he went "with [Gyamfuah] to room 516 of the Comfort Inn" and that he possessed drugs at that time, and that evidence was corroborated by the admissions of co-conspirator Gyamfuah. Plea Tr. Dec. 29, 2006, at 38-39; Stmt. of Facts ¶ 13 [Dkt. No. 79]. On this record, this claim fails.

### 3. Filing the § 851 Information (Claim 4)

Sakyi claims that the prosecutor told him he would not file a § 851 information but then did so after plea negotiations broke down. That claim does not establish prosecutorial

misconduct.  Prosecutors are allowed to threaten and charge defendants with harsher offenses

and expose them to more severe punishment if they refuse to accept plea offers.  United States v.

Morsley, 64 F.3d 907, 920 (4th Cir. 1995) (citing Bordenkircher v. Hayes, 434 U.S. 357, 363

(1978)); see also United States v. Goodwin, 457 U.S. 368, 378-79 (1982) ("[A] prosecutor may

file additional charges if an initial expectation that a defendant would plead guilty to lesser

charges proves unfounded.").  There was never an actual agreement in this case under which the

government promised not to file a § 851 information, and Sakyi was on clear notice that one had

been filed, and the ramifications of that filing, when he pleaded guilty.  Therefore, this claim is

meritless and will be dismissed.

>    4.  Denial of Counsel (Claim 5)

This claim is barely comprehensible.  Sakyi appears to be arguing that early in the case

his family retained Bernard Grimm to represent him, yet he also mentions Vangellow being his

attorney at the same time.  He does not allege that he wanted Grimm to be his counsel and his

conduct on December 27, 2006, when he rejected the services of another attorney, Christopher

Amolsch, ostensibly hired by his family, and asked that Vangellow remain his counsel

undermines any argument that the government interfered with his desire to have Grimm

represent him.  It is also significant that this issue was not raised in Sakyi's much longer first

Motion to Vacate.  For all these reasons, this claim will be dismissed.

>    5.  Use of Sakyi's Identification (Claim 6)

As with the previous claim, this claim is barely comprehensible.  Sakyi appears to be

complaining that the prosecutor approached him in the lobby of the courthouse (obviously before

Sakyi had been charged) and asked him who he was and whether he had hired a lawyer for Fred

Asante and Gifty Boakye, who had been arrested.  He further alleges that the prosecutor asked

the lawyer representing Asante and Boakye who was paying his fees and, according to Sakyi, the

lawyer showed Sakyi's business check to the prosecutor. Nothing in this claim makes out a claim of prosecutorial misconduct. Sakyi does not allege that he was under arrest when approached by the prosecutor and does not allege that he was represented by counsel at the time. He does not even describe what, if any, prejudice resulted from this interaction. Therefore, this claim is meritless and will be dismissed.

### 6.  Failure to Investigate Prior Drug Charge (Claim 7)

Sakyi alleges that after he told the government that he was innocent of his prior drug charge, which was cited in the § 851 information as the basis for increasing the mandatory minimum sentence, the prosecutor should have investigated that prior conviction. This claim essentially repeats Sakyi's previous claim that Vangellow provided ineffective assistance of counsel by failing to investigate that conviction further. As already explained, Sakyi was properly convicted of possession of five grams of crack with intent to distribute, and his conviction was upheld on appeal. Moreover, Sakyi unambiguously admitted to being guilty of the prior drug offense and to understanding the impact it would have on his sentence. See Plea Tr. Dec. 29, 2006, at 10.

### 7.  Breach of Plea Agreement (Claim 8)

Sakyi complains that the government coerced him into pleading guilty by promising that if he accepted a proposed plea agreement, charges against Rose Starks, the mother of his child, would be dropped. Sakyi admits that after he refused to accept that plea agreement, the government included Starks in the second superseding indictment. He then told the prosecutor that he would accept a plea agreement if the government dropped the charges against Starks but the prosecutor said it was too late. Sakyi further alleges that the prosecutor stated that "if [Sakyi] will accept the guilty plea deal he will not seek jail time for Ms. Rose Starks. So [Sakyi] told Mr. Amolsch and the prosecutor that [he] will take the plea." Mot. to Vacate 13 [Dkt. No. 253].

In neither of the two written plea agreements is there any mention of such an agreement. Instead, during both plea colloquies Sakyi denied that he had any side deals or understandings outside of the written plea agreements.[21] As previously stated, during a plea colloquy the statements made by a defendant who is under an affirmation to tell the truth, will be binding on him. "Solemn declarations in open court carry a strong presumption of verity." Allison, 431 U.S. at 74. Because Sakyi has offered nothing more than self-serving allegations to support this claim, it will be dismissed.

### C. Court Errors

#### 1. Sentencing Errors (Claims 1, 2, 4, 5, 6, and 7)

Six of the nine alleged errors by the Court relate to sentencing decisions. Specifically, Sakyi objects to the offense level having been increased two levels for obstruction of justice (Claim 1) and by four levels for being a leader of more than five persons (Claim 2). He also objects to his criminal history being increased by three levels for two driving-while-suspended charges, which he alleges were not disclosed to him (Claim 5), and by a two-point increase because of the recency of his conviction (Claim 7). In addition, Sakyi claims that the Court erred

---

[21]   THE COURT: Now, outside of the written plea agreement, do you have any side deals or side understandings with any investigators, Immigration officials, DEA officials, prosecutors or anybody else concerning this case?

THE DEFENDANT: No, your Honor.

Plea Tr. Dec. 27, 2006, at 17.

THE COURT: And is the written plea agreement that's in Court today the complete understanding that you have reached with the government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you have -- in your view, do you have any side deals or side understandings with anybody . . . that's not clearly written in the plea agreement?

THE DEFENDANT: No, your Honor.

Plea Tr. Dec. 29, 2006, at 14.

by sentencing him to ten years' supervised release (Claim 4) and by saying that the § 851 charged in the information would have no effect on his sentence (Claim 6).

Barring extraordinary circumstances, an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Rather, with regard to sentencing, § 2255 provides relief only if the sentence was in excess of the statutory maximum or is otherwise a "miscarriage of justice." Id. Sakyi has not argued that any of the sentences exceeded the statutory limit for that particular offense and, in fact, none did. Several counts exposed Sakyi to life imprisonment; therefore, his total sentence of 320 months incarceration did not exceed the maximum statutory sentence that Sakyi could have received. In addition to these alleged sentencing errors not being proper issues for a § 2255 motion, they were either resolved against Sakyi on appeal or procedurally defaulted because they were not raised on appeal, and there is no claim of ineffective appellate counsel in this motion.

Claim 4 appears to address supervised release issues. To the extent Sakyi is arguing that the ten-year period of supervised release imposed on Counts 1, 10, and 11 should have been five years, he is wrong. As a result of the § 851 information being filed, not only were the statutory minimum terms of imprisonment doubled from ten years to twenty years for Counts 1, 10, and 11, but so were the maximum periods of supervised release increased from five years to ten years, and Sakyi was clearly on notice of the lengthened period of supervised release during both plea colloquies. See Plea Tr. Dec. 29, 2006, at 7-8, 10; Plea Tr. Dec. 27, 2006, at 21-22.

In Claim 6, Sakyi alleges that the Court erred by saying that the § 851 information had no effect on his sentence. In both plea colloquies the Court explained the effect that the § 851 information would have on the sentence by describing how the mandatory minimum sentence for

29

the drug counts would increase from ten to twenty years, and the supervised release periods would increase from five to ten years. See Plea Tr. Dec. 29, 2006, at 7-8, 10; Plea Tr. Dec. 27, 2006, at 21-22. Sakyi may be referring to a comment made during the sentencing hearing. At that hearing, he complained about receiving the § 851 information, to which the Court responded, "The 851 had no effect at all on your sentence in this case. All that does is increases the statutory minimum from 10 to 20 years. Your guidelines put you way above the statutory minimum. Whether the government had filed an 851 or not really doesn't make any difference as to how the guidelines are calculated in your case." Sentencing Tr. 9-10. Therefore, Sakyi was on notice of the sentencing effect of the § 851 charge before he pleaded guilty, and the Court did not misinform him at the sentencing hearing of the § 851 charge's effect, or lack thereof, on his ultimate length of imprisonment.

For all these reasons, Claims 1, 2, and 4 through 7 will be dismissed.

2. Withdrawal of Guilty Pleas (Claim 3)

Sakyi alleges that the Court erred in not allowing him to withdraw his guilty pleas. As discussed above, there is no record of Sakyi explicitly making such a motion, and his argument that his counsel was ineffective in failing to file such a motion demonstrates that no such motion was ever presented to the Court.

To the extent Sakyi is trying to argue that the Court should have assumed he wanted to withdraw his guilty pleas from the nature of his complaints about the Presentence Report, the Court raised that issue but immediately stated that, under the Moore factors, such a motion made

30

at the sentencing hearing would have been summarily rejected as untimely. Lastly, this claim

was not raised on appeal and, therefore, is procedurally defaulted[22] and will be dismissed.

### 3. Alleyne (Claim 8)

Citing to Alleyne v. United States. 133 S. Ct. 2151 (2013), Sakyi argues that because the

leadership and obstruction enhancements were not alleged in the indictment and found by a jury

the Court erred in applying these enhancements to calculate his guidelines. At the outset, this

claim fails because Alleyne does not apply to this case. "New rules of constitutional criminal

procedural 'are generally not applied retroactively on collateral review.'" United States v.

Sanders, 247 F.3d 139, 146 (4th Cir. 2001) (quoting United States v. Mandanici, 205 F.3d 519,

527 (2d. Cir. 2000)). More specifically, "[A] new rule is not 'made retroactive to cases on

collateral review' unless the Supreme Court holds it to be retroactive." Tyler v. Cain, 533 U.S.

656, 663 (2001).

Sakyi's conviction became final on February 19, 2013, when his petition for certiorari

was denied by the Supreme Court. Alleyne was decided several months later on June 17, 2013.

Accordingly, he may only rely on Alleyne for relief if the Supreme Court made Alleyne

retroactively applicable, and the Fourth Circuit has recognized, in an unpublished per curiam

opinion, that "Alleyne has not been made retroactively applicable to cases on collateral review."

United States v. Stewart, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (per curiam).

Even if Alleyne did apply retroactively to Sakyi's case, it would not help him because it

did not hold that every fact that may increase a guideline range must be charged in the

indictment and found beyond a reasonable doubt by the jury. Instead, the holding is limited to

requiring only that those facts which trigger a mandatory minimum sentence must be charged in

---

[22] Sakyi had the assistance of counsel for his appeal and he has not raised any claim of
ineffective assistance of appellate counsel.

the indictment and decided by a jury because such facts are essential elements of the offense.

The decision does not require a jury determination of mere guideline factors that support

discretionary findings by the Court.  Therefore, this claim will be dismissed.

    4.  <u>Insufficient Time for Guilty Plea (Claim 9)</u>

In his last claim, Sakyi argues that the Court did not give him and Vangellow enough

time to go over the case before his plea.  To the contrary, the record reflects that after the Court

refused to accept Sakyi's plea on Wednesday, December 27, 2006, no date was set for a second

plea hearing, although the Court stated that it could schedule one during the following week.

Instead, the parties, not the Court, scheduled the second plea hearing two days later, for Friday,

December 29, 2006.  Before allowing Sakyi to plead guilty on December 29, 2006, he was again

placed under an affirmation to tell the truth, and fully questioned about whether he had taken

enough time to consider the plea agreement:

> THE COURT:  Now, Mr. Sakyi, have you had enough time to thoroughly go over the revised plea agreement with your attorney?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  All right.  Did you spend plenty of time with Mr. Vangellow, talking with him about the facts of the case and the plea agreement?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Have your [sic] read over this new plea agreement for yourself, word for word?
>
> THE DEFENDANT:  Yes, your Honor.
>
> THE COURT:  Have you discussed it with Mr. Vangellow?
>
> THE DEFENDANT:  Yes, your honor.

Plea Tr. Dec. 29, 2006, at 6.

As this colloquy clearly establishes, Sakyi admitted having had sufficient time to consider pleading guilty.  Lastly, as to each count to which he pleaded guilty, he was asked whether he claimed in any respect that he was innocent, and he answered "no" as to each count. Plea Tr. Dec. 29, 2006, at 45-48.  Therefore, this claim is meritless and will be dismissed.

### III. CONCLUSION

Because the record established in connection with both his first and second Motions to Vacate demonstrates that none of Sakyi's claims has merit, there is no need for an evidentiary hearing and this Motion to Vacate will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 14 day of April, 2015.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

33